

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WMP:JMK:DCP/JN
F.#2016R01428

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 3, 2017

By ECF

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Tibor Klein, et al.
                 Criminal Docket No. 16-442 (JMA)

Dear Judge Azrack:

      Following oral argument before the Court on January 26, 2017, the government respectfully submits the following pretrial motion to preclude the defendant Robert Schulman's admission of a series of self-serving exculpatory statements made in April 2011 in response to an inquiry from the Financial Industry Regulatory Authority ("FINRA") (collectively, the "Prior Statements"). During the January 26, 2017 status conference, defense counsel proffered the defendant's intent to rely on these statements at trial as a defense to the charged crime. However, because the defendant's prior statements are irrelevant to his intent to commit the charged crimes and constitute inadmissible hearsay, the statements should be precluded in their entirety. Trial in the above-captioned case is currently scheduled to begin on March 6, 2017.

I.     Background

    A.     Offense Conduct

      On or about August 4, 2016, a grand jury in the Eastern District of New York returned a two-count indictment charging the defendants Tibor Klein and Robert Schulman with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff. The charges stem from a conspiracy, taking place between May 2009 and December 2010, in which the defendants traded in the securities of King Pharmaceuticals, Inc. ("King") based on material, non-public information. As alleged in the indictment, Schulman obtained material, non-public information that King would be acquired by

Pfizer Inc. ("Pfizer"), and provided that information to Klein, his investment adviser and friend on or about August 13-14, 2010. The government intends to prove at trial that Schulman, who was then a partner at Hunton & Williams ("Hunton") advising King on an intellectual property litigation, informed Klein that there was a merger pending between King and Pfizer with the intent that Klein trade on that information. The following Monday, August 16, 2010, Klein began trading large amounts of King securities for Schulman and others.

      B.      The FINRA Investigation

Following the King /Pfizer merger, FINRA began a review of trading in King securities. As part of that review, in early April 2011, FINRA representatives contacted Hunton seeking additional information regarding trading in King securities. In particular, FINRA provided Hunton with a list of individuals and entities and asked Hunton to determine whether any of its employees with knowledge of the King / Pfizer merger had a past or present relationship with the individuals on the list.[1] See GX A (SCHULMAN_298). On or about April 8, 2011 at approximately 3:00 p.m., a Hunton employee e-mailed the list to the defendant to review. Id. Approximately 38 minutes later, at 3:38 p.m., the defendant replied to the same Hunton employee by e-mail, stating:

> I do know Tibor Klein. He is my financial planner. I have periodic contact with him but don't recall if I did during the relevant time period. As he manages my portfolio without my input, I called to inquire whether I ever had a position in this stock and he confirmed that I did not.

Id.

Approximately 19 minutes later, at 3:57 p.m., the defendant sent another e-mail to the same Hunton employee that appears to be unprompted by any communication that the defendant received.[2] (See GX A, at 296). The e-mail stated, in its entirety:

> I see I need to provide the following

---

[1] The factual information contained in this section of the motion is based predominantly on e-mail communications Schulman produced to the SEC. In many instances, the e-mail communications are incomplete and reference materials not included in Schulman's production to the SEC. For instance, Schulman's documents do not contain the actual list of individuals or entities that FINRA provided to Hunton. While the piecemeal nature of Schulman's document production to the SEC certainly calls into question the reliability of the very materials upon which he seeks to rely, the government submits that, for the reasons discussed herein, these e-mails should not be admitted at all. The government further submits that the scattershot nature of the defendant's document production to the SEC does not provide further grounds for Schulman to obtain documents from FINRA or the SEC, which are already the subject of Rule 17(c) subpoenas that the government intends to oppose.

[2] Based on the government's information at this time, the Hunton employee with whom the defendant e-mailed is an administrative assistant to a senior Hunton partner. The senior Hunton partner was not included on the defendant's e-mails.

2

> 1 ) Name of person
>
> Tabor [sic] Klein
>
> 2) Nature and history of relationship
>
> Financial planner for about 12 yrs.
>
> 3) Frequency of contact
>
> once or twice a quarter on average
>
> 4) Contact between July 9 and October 10, 2010.
>
> No specific recollection, but probable that there was either face to face or telephonic contact at some point in that period
>
> 5) Circumstances of knowledge- Mr .. Klein and I talk about my practice and he definitely knew I was working on a litigation for King. We would have never discussed anything beyond general issues of travelling for depositions or the like.
>
> 6) Any other information. As Mr .. Klein directs my portfolio with complete control, I generally do not know about any particular acquisitions or sales. After receipt of this communication, I contacted Mr. Klein and confirmed that no position was taken on my behalf for this stock.

(Id.)

Approximately 7 minutes later, the defendant sent an additional e-mail to the same Hunton employee stating: "Correction. My broker informed me that I did have 27k position in this. I did not know about this." (See id.) The defendant has also represented that he possesses telephone records related to his communications with Klein on April 8, 2011.

### C. Defense Counsel's Proffer that the Defendant Intends to Rely on his Statements Related to the FINRA Investigation

During oral argument before the Court on January 26, 2017, defense counsel proffered a lengthy theory of the government's prosecution strategy that was seemingly unrelated to the motions at issue and contained material misrepresentations and baseless assumptions. As part of that monologue, defense counsel focused on Schulman's response to the FINRA request and interactions with Klein regarding that request as exculpatory evidence regarding Schulman's intent to engage in insider trading. Based on his statements at that appearance, counsel appears to presume that the evidence at issue is admissible, and has not made a motion seeking to admit that evidence. As discussed below, the evidence is inadmissible.

II.     The Defendant's Prior Statements in Response to the FINRA Inquiry Should Be Excluded

The government respectfully requests that defense counsel be precluded from introducing—through cross-examination or otherwise—the defendant's April 8, 2011 e-mails and evidence of any phone conversations between himself and Tibor Klein on the same date. As set forth below, the evidence is both irrelevant as to the defendant's intent to commit the charged crimes, and is inadmissible hearsay.

A.      The Prior Statements Are Not Relevant as to Intent

The defendant's Prior Statements and evidence of any April 2011 phone calls between the defendant and Klein should be excluded because they are not relevant to the primary issue in dispute – the defendant's intent to commit securities fraud.

Pursuant to Rule 401 of the Federal Rules of Evidence ("FRE"), "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Generally, relevant evidence is admissible and "irrelevant evidence is not admissible." See FRE Rule 402. Courts have withheld supposed exculpatory statements that post-date the charged conduct in a conspiracy as irrelevant. See United States v. Schwartz, 924 F.2d 410, 423-24 (2d Cir. 1991) (affirming the district court's decision to exclude exculpatory conversations as irrelevant because the conversations post-dated the unraveling criminal conspiracy); see also United States v. Cardascia, 951 F.2d 474, 487-88 (2d Cir. 1991) (citing United States v. Jackson, 780 F.2d 1305 (7th Cir. 1986)).

As a threshold matter, the e-mails have no probative value as to the reason the defendant seeks to admit them: to disprove his intent to engage in securities fraud. The e-mails were written more than four months after the charged conspiracy and more than eight months after the defendant provided the material non-public information to Klein and Klein purchased King securities for the defendant and others. Accordingly, the defendant's statements post-date the fraudulent trading activity and only speak to his intent to distance himself from the fraudulent trading activity once it was uncovered by FINRA. Evidence related to the defendant's response to a FINRA inquiry in April 2011 – months after the securities trading at issue – is utterly irrelevant to the key issue at trial: the defendant's intent at the time the tip of material non-public information to Klein took place. Thus, the Prior Statements are not relevant and should be excluded.

B.      The Prior Statements Constitute Inadmissible Hearsay

Even assuming, arguendo, that the Prior Statements were relevant, they nonetheless constitute inadmissible evidence because they are pure hearsay. Pursuant to FRE 801(c), hearsay is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." However, "[i]f the significance of an offered statements lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." FRE Rule 801(c) Advisory Committee note (emphasis added).

4

Hearsay is generally inadmissible unless another law or rule provides otherwise. See FRE Rule 802. However, pursuant to FRE 801(d)(2), "[a] statement [ ] is not hearsay if – [t]he statement is offered against a party and is (A) made by the party[.]" Fed. R. Evid. 801(d)(2) (emphasis added). Thus, relevant statements or admissions by a defendant are admissible when entered by the government at trial. See id.

It is well established that a defendant's own statements are hearsay. Indeed, FRE 801(d)(2) does not apply to a defendant. See FRE. 801, 803, and 804. Therefore, a defendant is generally prohibited from introducing her own out-of-court statements at trial. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982); see also United States v. Demosthene, 334 F. Supp.2d 378, 381 (S.D.N.Y. 2004) ("[A] defendant generally may not introduce his own prior statement for the truth of the matters asserted therein.... By seeking to introduce such statements, [the defendant] is, in essence, attempting to present a second version of his own admissions in order to permit the jury to decide which of the two versions to credit .... [s]uch a substantive comparison ... would not be admissible under either Federal Rule of Evidence 801(d)(2)(a) or the Second Circuit's holding in Marin.").

The defendant's false exculpatory claims in the face of a pending investigation into trading of King securities that, inter alia, he had no knowledge of Klein's trading activity and did not discuss the King / Pfizer merger, are clearly self-serving hearsay statements intended to distort and minimize his own criminal conduct. The defendant cannot rely on such hearsay statements without being subject to cross-examination and without allowing the jury an opportunity to evaluate his credibility. Accordingly, the defendant should be precluded from admitting the Prior Statements at trial.

III.   Conclusion

For the foregoing reasons, the government respectfully submits that the Court should preclude admission of the Prior Statements by the defendant.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:   /s/  David C. Pitluck
David C. Pitluck
Julia Nestor
Assistant U.S. Attorneys
718-254-6108/6297

cc:   All Defense Counsel (by ECF and email)