

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WMP:DCP/JN　　　　　　　　　　　　　　　　*271 Cadman Plaza East*
F.#2016R01428　　　　　　　　　　　　　　　*Brooklyn, New York 11201*

February 14, 2017

By ECF

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

　　　　　　　Re:　　United States v. Robert Schulman et. al.
　　　　　　　　　　　Criminal Docket No. 16-442 (JMA)

Dear Judge Azrack:

　　　　The government respectfully submits this reply to the defendant Robert Schulman's response ("Def. Res.") in connection with the government's pretrial motion ("Gov. Mot.") providing notice that it may introduce certain of the defendant's statements made under oath to the U.S. Securities and Exchange Commission ("SEC") (hereinafter, "SEC Statements"), as well as certain statements made during a meeting with the U.S. Attorney's Office ("EDNY") (hereinafter, "EDNY Statements"). The defendant argues that he should be permitted to introduce his self-exculpatory statements. The defendant's arguments exceed the confines of what is permitted under the law and should be rejected.

I.　　Applicable Law

　　　　Although Rule 106 also applies to oral statements, see United States v. Mussaleen, 35 F.3d 692, 695 (2d Cir. 2004), the Second Circuit has made clear that the rule does not provide a defendant with a blanket opportunity to offer his own prior statements just because the government has introduced the defendant's inculpatory statements. See United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983) ("Rule 106 does not render admissible evidence that is otherwise inadmissible."). Rather, a defendant must demonstrate that the omitted portion of the hearsay statement is "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007) (internal quotations and citations omitted). "The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (citations omitted).

1

II.   The Court Should Deny Schulman's Counter-Designations Regarding the "King for a Day" Statement

The Court should deny the defendant's counter-designations regarding his statement to both the SEC and the EDNY that he told his investment adviser Tibor Klein that it "would be nice to be king for a day" in reference to King Pharmaceuticals. The extensive extraneous testimony the defendant seeks to admit does not provide necessary context for his statement, but merely serves to introduce his self-serving hearsay statements into evidence.[1] Even if the defendant were to testify in addition to the introduction of his statements, the only purpose served by the extraneous statements would be to bolster his own testimony, which is similarly impermissible.

Notably, the defendant's theory of the rule of completeness – that almost any statement made by him that tangentially touches on the trading activity at issue would explain his statement to Klein regarding King pharmaceuticals – is an inaccurate interpretation of the rule. The defendant's interpretation of the law would swallow the limited exception under which certain statements that truly serve to explain and provide context to the defendant's statements would be admissible.

   A.   Counter-Designations 1 and 2 are Inadmissible

The defendant seeks to admit his self-serving statement that his so called "blurt" to Tibor Klein – "boy, it would be nice to be king for a day" – was made as a joke and under the influence of alcohol. See Def. Res. at 3-4. The defendant should not be permitted to admit these peripheral and completely self-serving statements into evidence because they do not provide the jury with any context and are not necessary to ensure the jury's fair and impartial understanding of the defendant's statement to Klein. The circumstances under which these statements were made are important in considering their admissibility. The defendant made the statements while being interviewed by the SEC in connection with potential wrongdoing. He should not be permitted to admit self-serving statements under the guise of providing context. Nor does the self-serving claim made by the defendant that he was drinking "quite a bit of wine" at the time he made the "king for a day" statement provide the jury with any further understanding of his statement or in any way change the intended purpose of the statement.

The defendant also seeks to admit the portion of his answer to SEC questioning where he says that he would not have told Klein anything about the meeting between King and Pfizer or about a merger. Id. at 4. The statement the government seeks to introduce does not mention the merger, or any meetings; therefore, the introduction of the defendant's tangential explanation would not serve as context or explanation to the jury.

The defendant argues that he should be permitted to introduce the entire portion of his testimony regarding the "king for a day" statement because, at the time of his interview with

---

[1] Notably, when viewing the defendant's counter-designations in their entirety, it appears that he simply seeks to admit much of the remainder of his SEC testimony into evidence. This is completely inconsistent with the enumerated purpose of the rule of completeness.

the EDNY, he was asked to confirm the testimony he provided to the SEC. Id. The fact that the defendant later confirmed his SEC testimony to the EDNY does not make it admissible, nor does it lessen the self-serving nature of his statements. The government does not seek to introduce the portion of the EDNY interview where the defendant confirms his SEC testimony; therefore, the entirety of the testimony constitutes nothing more than bolstering his prior statements and should not be admitted.

Lastly, as part of his second counter-designation, the defendant cites later portions of his SEC testimony, which are again repetitive of his earlier self-serving statements cited above, explaining away the "king for a day" comment. Id. at 4-5. These statements are even less relevant to the jury's consideration of his "king for a day" comment made earlier in his SEC testimony.

B. Counter-Designations 3 and 4 are Inadmissible

In similar fashion, the defendant argues that he should be permitted to introduce his self-serving statements when speaking to the EDNY about his "king for a day comment." Id. at 5-6. For the same reasons that the government argues above, these self-serving statements should not be admitted with respect to the defendant's EDNY testimony. The statement the defendant seeks to admit preceding his "king for a day" comment includes his description of the weekend he met with Klein, which is completely irrelevant to the jury's consideration of the defendant's statement.[2] Furthermore, the defendant's annotation as part of his EDNY interview that the "king for a day" statement "changed his life" is totally unrelated to the charged conspiracy, provides absolutely no context to the jury regarding why he made the statement, and is therefore, inadmissible.

As discussed above, the fact that Schulman confirms portions of his SEC testimony when speaking to the EDNY is also irrelevant to the jury's understanding of his "king for a day" statements. Id. at 6. Lastly, Schulman's actions following the meeting are similarly irrelevant to the statement he made at the time of the actual meeting with Klein, nor is his explanation that "he didn't believe he did anything wrong or 'actionable.'" Id. at 6. See Johnson, 507 F.3d at 796 (holding that district court's decision to only introduce statements made during the planning stages of the robbery and not in connection with the execution of the robbery was entirely proper under the rule of completeness). It is similarly irrelevant to the jury's understanding of the defendant's statement what the defendant's understanding was of his King stock ownership or that of Klein's other customers. This understanding does not bear on the statement he made to Klein regarding the merger with King. The defendant's counter-designations are merely an attempt to admit his unrelated self-serving statements into evidence.

Moreover, the defendant's argument that his self-serving statements in response to his lawyer's questioning during the EDNY interview should be admissible to explain his comment

---

[2] Notably, the purported fact that the meeting with Klein that weekend related to the passing of the defendant's father in-law is not only irrelevant, it inappropriately seeks sympathy from the jury.

3

to Klein stretches the law beyond recognition. The defendant's response to his lawyer's questioning is the epitome of self-serving and should be inadmissible. The defendant is not permitted to gratuitously admit, through cross-examination or otherwise, his self-serving statements regarding his intent and motive through his counsel's thinly veiled closing arguments to EDNY attorneys in an attempt to convince the EDNY not to charge the defendant. These statements provide no context and are inadmissible.

III.     The Court Should Deny the defendant's Counter-Designations Regarding His Knowledge with Respect to the King/Pfizer Merger

   A.     Counter-Designations 5 through 7 are Inadmissible

First, the defendant attempts to counter-designate large portions of his self-serving SEC testimony to counter the government's limited designations regarding his knowledge of the potential merger between King and Pfizer. See Def. Res. at 7-11. The government's designations are limited to whether the defendant knew about the potential merger and the basis for that knowledge. Notably, most of the statements the defendant seeks to introduce constitute his attempts to guess, based on purported prior experience, what stage the merger was in. The defendant's alleged speculation is not relevant for the jury's understanding regarding when and how the defendant learned about the potential merger.

Furthermore, no portion of the testimony designated by the government refers to the defendant's work on the potential merger, and therefore, the jury will not be misled about the defendant's role in the merger. Notably, there is no doubt that either the government or the defendant will admit time records from Hunton and Williams ("Hunton") at trial regarding the defendant's work for King, therefore, there is no risk that the jury will be misled regarding the defendant's role.

Moreover, the defendant's history with similar litigation is completely unnecessary to provide context for when and how the defendant learned of the possible merger. Id. at 8-9, 10-11. The counter-designated statements, which when read in context, are clearly self-serving attempts to explain away the materiality of the defendant's knowledge when being questioned by the SEC and later by the EDNY. Again, the defendant's statements are mere guesses offered to mitigate his own knowledge and do not provide context regarding when and from whom he learned about the potential merger.

   B.     Counter-Designation 8 is Unnecessary

The defendant argues that his testimony regarding Hunton's role is necessary to cure the "inaccurate impression that [Hunton] was working on the merger itself." First, no such impression is created by the government's designated testimony. Second, there will be ample evidence and testimony at trial that will make it perfectly clear what Hunton's role was in relation to the King/Pfizer merger. The defendant's statements on the topic are unnecessary.

C.   Counter-Designation 9 is Inappropriate and Inadmissible

First, the defendant claims that the government's designated EDNY testimony relies on leading questions, which inappropriately indicate that the defendant knew of the merger, as opposed to a potential merger. See Def. Res. at 12. However, as the defendant highlights in his own briefing, the government's designated testimony from the EDNY interview explicitly states that "Schulman was asked to discuss the point at which he learned about the potential merger of Pfizer and King." Id. (emphasis added). The government also seeks to admit the defendant's statement that the merger discussed was either a "full merger or a partial sale," and the government's designations repeatedly note that the merger was "possible," not a guarantee. Id. at 13. There is nothing misleading or inaccurate about the questions posed.

As discussed above with respect to the SEC testimony, the defendant's counter-designated EDNY testimony is nothing more than an attempt to explain away the extent of his knowledge through mere surmise. Such testimony, which discusses what the defendant knew about a meeting that David Kelly and Tom Slater attended with Pfizer and King in New York, should not be admissible to provide the jury with context regarding the government's designated EDNY testimony.

D.   The Defendant's Objections to Certain Designations of SEC Testimony Based on Hearsay Are Unfounded

The defendant asserts that the SEC's questioning regarding when the defendant knew about the potential King/Pfizer merger invokes hearsay statements. See Def. Res. at 13-14. This objection has no merit. The government seeks to introduce the defendant's statements, not the SEC's questions, for the truth of the matter. As with any SEC testimony, the questions are necessary to provide the context for the defendant's responses and the fact that the SEC's questions are based on hearsay has no bearing on the admissibility of the defendant's responses. Indeed, it is impossible to fathom any questioning in any setting that would not be based, at least in part, on hearsay. The defendant's responses to the SEC's questions, even if grounded in hearsay, are admissible because those statements are made by a party opponent. See Fed. R. Evid. 801(d)(2).

IV.   The Court Should Deny the Defendant's Counter-Designations Regarding His Knowledge with Respect to his Portfolio with Klein Financial

Next, the defendant attempts to circumvent the rules of evidence by trying to admit his own self-serving statements regarding his overall relationship with Klein. See Def. Res. at 14-15. The defendant explicitly states that he designates portions of his SEC testimony and EDNY interview to "rebut the government's theory that [the defendant's] Enzo trading somehow proves that Schulman] 'was acutely aware of the stocks in his portfolio,'" which the defendant asserts is the government's theory. Id. at 15. While the defendant attempts to introduce his extraneous testimony under the guise that it would "provide necessary context" for his SEC testimony and statements to the EDNY, that is clearly not the intent nor the result of the counter-designated testimony. Id. The only purpose such testimony would serve is to introduce

5

the defendant's self-serving statements regarding his lack of knowledge as to his own portfolio, which is inadmissible hearsay.

   A.   Counter-Designation 10 and 11 are Inadmissible

As an initial matter, the government's designated testimony makes clear that the defendant did not make specific investment choices over the life of his account with Klein Financial with certain exceptions, as the defendant describes. The government's designated testimony relates specifically to Enzo pharmaceuticals. The government's designation begins with the following question and answer from the defendant's SEC testimony.

> **Q: Other than that, you did not make specific investment choices over the life of the account at Klein?**
>
> A: <u>No</u>. I mean, <u>the only specific stock I can remember discussing with him was Enzo Biochem</u> because that was a client that he sort of learned about because I worked for them, and he told me, at one point, that he had bought Enzo and I remember being a little upset at him because I think that the CEO is a certifiable lunatic, and when he bought that, I remember being a little upset, but I don't remember what happened with that. I think he sold it at some point after that.

See Gov. Mot. at 4; SEC Transcript at 26. (emphasis added).

The defendant's attempts to include extraneous information about his wife's role in handling the family's personal finances and their discussions with Klein do not provide any additional context for the above excerpted statement or any of the questions and answers in the SEC transcript regarding Enzo. See Def. Res. at 15. Both the question and the answer are specifically designed to show the defendant's knowledge of trading in his account. His attempts to cloud this fact with tangential knowledge of who else may have made investment choices in his account does not contribute meaningfully to the jury's understanding of the testimony to be introduced. Similarly, there is no basis to admit the defendant's counter-designations providing additional self-serving hearsay information regarding his lack of involvement in the Klein Financial Services account to explain his knowledge regarding Klein's purchase of Enzo stock in his account. The jury does not need to understand the general market investment strategy of the account, nor that Klein was interested in South Dakota and oil drilling. Id. at 16-17. As the government's designation already makes perfectly clear, the defendant did not make specific investment choices over the life of his account, with certain exceptions, as specified in the government's designations.

   B.   Counter-Designation 12 Through 14 are Similarly Unnecessary and Inadmissible

The defendant also seeks to counter-designate his SEC testimony regarding his review of Pershing records for his accounts with Klein Financial. See Def. Res. at 18-19. This testimony provides absolutely no context for the jury regarding the defendant's knowledge of

6

Klein's purchase of Enzo pharmaceutical stock. None of the government's designations mention the defendant's review of his Pershing records.

V.        The Court Should Deny the Defendant's Counter-Designations Regarding His Historical Dealings with Material, Non-Public Information

The defendant's last request for counter-designated testimony is baseless in that it seeks to admit the defendant's irrelevant musings about his own background dealing with inside information. Such testimony is hearsay and not admissible under the strict parameters of the rule of completeness because it provides no context or explanation to the jury. It is clear, however, that the defendant's counter-designated testimony only serves as an inappropriate attempt to introduce inadmissible evidence that he claims to have not engaged in insider trading in other instances where he possessed material non-public information. This testimony is inadmissible under any set of circumstances. See United States v. Scarpa, 897 F.2d 63, 70 (2d Cir.1990) ("[a] defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on specific occasions."); see also United States v. Gotti, 784 F. Supp. 1013, 1017 (E.D.N.Y. 1992) ("a defendant cannot establish that he did not commit a crime as to A because he did not commit a crime as to B."). Accordingly, the defendant's counter-designation of his self-serving testimony is both irrelevant and inadmissible.

VI.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court grant the government's motion and deny the defendant's counter-designations in their entirety.

                                                    Respectfully submitted,

                                                   ROBERT L. CAPERS
                                                   United States Attorney
                                                   Eastern District of New York

By:          /s/
                                                   Julia Nestor
                                                   David C. Pitluck
                                                   Assistant U.S. Attorneys
                                                   718-254-6297/6108

cc:   All Defense Counsel (by ECF)