

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WMP:DCP/JN  *271 Cadman Plaza East*
F.#2016R01428  *Brooklyn, New York 11201*

February 14, 2017

By ECF

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Robert Schulman, et al.
           Criminal Docket No. 16-442 (JMA)

Dear Judge Azrack:

      The government respectfully submits this letter in reply to the defendant Robert Schulman's response ("Def. Ltr") to the government's motion in limine to preclude the admission of a series of self-serving exculpatory statements made in April 2011 in response to an inquiry from the Financial Industry Regulatory Authority ("FINRA") (collectively, the "Prior Statements").

      In response to the government's motion, the defendant made a series of conclusory legal representations asserting that his internal Hunton and Williams e-mails in response to the FINRA inquiry are admissible, but ultimately asked the Court to defer ruling on the admissibility of the Prior Statements until the issue arises at trial. See Def. Ltr. at 1. The defendant's attempts to avoid resolution of this issue until trial ignores extensive jurisprudence establishing that the Prior Statements are both irrelevant and constitute inadmissible hearsay. Because the clear legal framework governing the admission of this evidence does not depend on the amorphous factual issues raised by the defendant, the government believes that the admissibility of the Prior Statements can and should be resolved prior to trial and respectfully requests that the Court rule on their admissibility.

I.     The Prior Statements Are Not Admissible Under 803(3)

      The defendant summarily contends, without legal support, that the Prior Statements "would be admissible during Schulman's testimony under Federal Rule of Evidence ("FRE") 803(3) as '[a] statement of the declarant's then-existing state of mind." Def Ltr. at 1. The defendant is wrong. The government respectfully submits that these evidentiary rules apply

1

regardless of any "fact-specific inquiry" the defendant wishes to make at trial. The timing and content of the statements are readily apparent on their face and the defendant cannot introduce them through a government witness or his own testimony.

Pursuant to FRE Rule 803(3), "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" are not excluded by the rule against hearsay. See also United States v. Kadir, 718 F.3d 115, 124 (2d Cir. 2013). The defendant contends that the Prior Statements are subject to the Rule 803(3) hearsay exception because they are "contemporaneous proof that Rob Schulman did not know (and thus did not intend) that Tibor Klein had traded in King Pharmaceuticals ("King") stock on his behalf." Def. Ltr. at 1.

It is thus clear the defendant seeks to admit the Prior Statements to generate a factual basis for his argument that he had no knowledge that Klein traded King securities and that he therefore had no intent to engage in insider trading. Indeed, the Prior Statements are replete with declarations containing purported facts that the defendant needs to offer for their truth in order to argue that he did not have intent. The following examples, excerpted in relevant part, are instructive:

- "I do know Tibor Klein. He is my financial planner. I have periodic contact with him but don't recall if I did during the relevant time period. As he manages my portfolio without my input, I called to inquire whether I ever had a position in this stock and he confirmed that I did not."

- "As Mr. Klein directs my portfolio with complete control, I generally do not know about any particular acquisitions or sales. After receipt of this communication, I contacted Mr. Klein and confirmed that no position was taken on my behalf for this stock."

- "My broker informed me that I did have 27k position in this. I did not know about this."

In sum, the Prior Statements contain self-serving statements that the defendant seeks to introduce for their truth in evidence.[1]

As an initial matter, Rule 803(3) does not apply to a "statement of memory or belief to prove the fact remembered or believed." FRE Rule 803(3); see also United States v. DiMaria, 727 F.2d 265, 270 (2d Cir. 1984) (discussing the Rule 803(3) hearsay exception). As shown in part in the excerpts highlighted above, the defendant seeks to admit purported facts that he claims to have remembered or believed at a time when he had every reason to fabricate information, therefore, the defendant's prior statements are inadmissible.

---

[1] As set forth in the government's motion, to the extent that portions of the Prior Statements are not hearsay, they are also not relevant under FRE 401 and prejudicial under FRE 403.

2

Moreover, the Prior Statements are not statements of his state of mind at the time he provided the material, non-public information to Klein, but rather are post-hoc justifications for his past fraudulent actions, to which Rule 803(3) does not apply. The Second Circuit has recognized that "the exception under Rule 803(3) is a specialized application of the present sense impression and excited utterance exceptions preceding it in Rule 803, the reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." United States v. Cardascia, 951 F.2d 474, 487 (2d Cir. 1991). Therefore, the likelihood that the declarant is misrepresenting is not an additional qualification to the admissibility of state of mind hearsay statements." Id. at 488; see also DiMaria, 727 F.2d at 271 ("in applying the state of mind exception, there can be no apparent motive for misstatement.") (internal quotation omitted). "[T]o fall within Rule 803(3)'s 'state of mind' hearsay exception, the statements sought to be introduced must relate to the declarant's statement of mind during the various fraudulent transactions." United States v. Netschi, (emphasis in original) (citing Cardascia, 951 F.2d at 488).

The Second Circuit's decision in United States v. Netschi, 511 Fed. Appx. 58, 61 (2d Cir. 2013), is particularly instructive. The Netschi Court held that testimony concerning the defendant's shocked statements when he was told of his business partner's alleged wrongdoing did not fall within the state of mind hearsay exception. See id. at 61-62. Statements concerning what the defendant "said or did after the fraudulent transactions had taken place and as the scheme itself was being discovered" did not fall within the state of mind exception, because "the statements sought to be introduced must relate to the declarant's state of mind during the various fraudulent transactions." Id. at 61 (emphasis in original); see also United States v. Farhane, 634 F.3d 127, 173 (2d Cir. 2011) ("Backward looking inferences generally run afoul of Rule 803(3)'s express exclusion of 'statement[s] of memory or belief to prove the fact remembered or believed.'"); Cardascia, 951 F.2d at 488 ("To admit statements of one's state of mind with regard to conduct that occurred eight months earlier ... would significantly erode the intended breadth of this hearsay exception.").

Schulman's e-mails lack contemporaneity with the relevant fraudulent acts – the defendant's tip to Klein and Klein's subsequent trading – and came at a time when the conduct alleged in the conspiracy was complete. The defendant's e-mails were sent nearly eight months after the tip and in response to a FINRA inquiry, through his law firm, regarding FINRA's review of suspicious trading of King stock. It would gut the meaning of 803(3) to admit a defendant's proffered state of mind at the precise time that the fraudulent scheme began to unwind. Accordingly, the e-mails should be excluded.[2]

---

[2] The relevant hearsay rules apply regardless of whether the defendant testifies. It does not matter that counsel "always understood" that the e-mails would have to be introduced through the defendant, in the event he testifies. The evidentiary rules are unchanged because the defendant testifies. Moreover, the defendant is not permitted to testify regarding any hearsay statements made by Tibor Klein. Furthermore, if the defendant testifies regarding any narrow scope of admissible evidence regarding this exchange, he cannot use inadmissible e-mails to bolster his testimony.

II.     The Prior Statements Are Not Admissible as Prior Consistent Statements

The defendant claims that the e-mails could be admissible if the government opens the door to using those e-mails to rehabilitate attacks on Schulman's credibility. As an initial matter, the issue of whether the defendant can introduce the Prior Statements for the truth of the matter asserted to rehabilitate the defendant is a wholly different, and narrower, issue than whether the e-mails are directly admissible under a hearsay exception.

Furthermore, the defendant cannot, as he implies, introduce the Prior Statements to "rehabilitate attacks on Schulman's credibility." Def. Ltr. at 1. Under FRE 801(d)(1)(B), a statement is not hearsay if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement" "is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."

With regard to introducing the statements under FRE 801(d)(1)(B)(i), the opposing party must have alleged that the offered statement must have been made prior to the existence of the improper influence or motive and the offered statement must pertain to the particular part of the testimony that was challenged. See Tome v. United States, 513 U.S. 150, 157-60 (1995). Because the prior statement does not precede the improper motive to fabricate, the defendant cannot seek to admit the statements for their truth to rebut credibility challenges as consistent statements. As discussed in detail above, the Prior Statements were made in response to the FINRA inquiry, months after the alleged criminal conduct, and at a time when the defendant had every motive to fabricate.

But more broadly, the defendant seemingly interprets FRE 801(d)(1)(B)(ii) as permitting him to introduce the post-conspiracy, self-serving e-mails to rebut general attacks on his credibility during cross examination. The defendant's attempts to twist the "web" of prior consistent statements does not extend this far. The case law is clear that prior consistent statements may not be offered "to rebut only a generalized attack on credibility" because the prior statements have "no probative force beyond showing that the witness had at an earlier time been consistent with his trial testimony." United States v. Pierre, 781 F.2d 329, 333 (2d Cir. 1986) (citing United States v. Quinto, 781 F.2d 329 (2d Cir. 1978)). The relevant inquiry is whether the particular consistent statement sought to be used has some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony". Id. at 331; see also United States v. Simonelli, 237 F.3d 19, 28 (1st Cir. 2001) ("There is no rule admitting all prior consistent statements simply to bolster the credibility of a witness who has been impeached by particulars.").

The proper purposes for rehabilitation under this subsection are decidedly more restrictive. For instance, whether the prior consistent statement (1) explains or modifies a fragment thereof introduced by the opposite party for purposes of impeachment; (2) is otherwise related to or supportive of a denial or explanation offered in response to impeachment of a witness by an alleged self-contradiction, whether an inconsistent statement or a failure to speak when natural to do so, or (3) to rebut a charge of faulty memory. See 30B Fed. Prac. & Proc. Evid. §

7012 (2014 ed.); see also Pierre, 781 F.2d at 333.  It is difficult to see how the defendant's post-hoc assertion is at all relevant as a prior consistent statement under these standards, particularly given that the crux of the defendant's testimony relates to events taking place eight months earlier.  This portion of FRE 801 does not permit the defendant to try and rehabilitate other areas of impeachment with statements he made after the fraud was discovered, nor can it be offered as support for his statements made to the SEC and the government regarding his intent or knowledge.  The mere fact that he was consistent with his trial testimony at an earlier time is not sufficient because it has absolutely no probative force other than repetition and bolstering.  Id.  The defendant had a motive to lie at the time he made the Prior Statements and he cannot now use them as a shield to rebut general attacks on his credibility.

III.     Conclusion

For the foregoing reasons, the government respectfully submits that the Court should preclude admission of the Prior Statements by the defendant.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney
Eastern District of New York

By:     /s/  David C. Pitluck
David C. Pitluck
Julia Nestor
Assistant U.S. Attorneys
718-254-6108/6297

cc:   All Defense Counsel (by ECF and email)